**MICHAEL J. HARKER**
5040 EDNA AVE
Las Vegas, Nevada 89146
nreyna@harkerlawfirm.com
(702) 248-8011
Attorney for Debtor

**E-FILED December 27th , 2012**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In Re: SANDRA L SANCHEZ, Debtors. | CASE NO.:12-11548-lbr CHAPTER: 13 Hearing Date: February 07, 2013 Hearing Time: 3:15 p.m |
|---|---|

**MOTION TO VALUE COLLATERAL "STRIPP OFF" AND MODIFY RIGHTS OF LENDER PURSUANT TO 11 U.S.C SECTION 506(a) AND SECTION 1322**

COMES NOW, debtors SANDRA L SANCHEZ by and through their attorney of record and hereby submits the underlying MOTION TO VALUE COLLATERAL "STRIP OFF" AND MODIFY RIGHTS OF LENDER PURSUANT TO 11 U.S.C. 506(a) AND SECTION 1322.

This motion is based upon the points and authorities below the papers and pleadings on file herein and any and all other oral arguments allowed by the court at the time of hearing.

**POINTS AND AUTHORITIES**

Debtors SANDRA L SANCHEZ by and through their attorney of record Michael J Harker, Esq., and hereby moves this court for an order valuing collateral and modifying the rights of creditor WellsFargo Bank N.A. pursuant to 11 U.S.C. 506(a) and section 1322 and Bankruptcy Rules 3012 and 9014. In furtherance of this Motion, Debtor states as follows.



BOGGESS & HARKER
5550 Painted Mirage Road, Suite #255
Las Vegas, Nevada 89149
(702) 233-5040 - Fax 233-2209

1. Debtor filed the above referenced Chapter 13 Case number 12-11548-lbr in February 10, 2012.
2. On petition date, Debtors owned real property located at 6037 Gum Springs St North Las Vegas, NV 89081.
3. The value of the property was approximately $100,000.00 as of the petition date. See appraisal attached hereto as "Exhibit 1"
4. As of the petition date, the property was encumbered by a First Deed of Trust in favor of Bank Of America, with a principal balance of $ 211,350.00.
5. As of petition date, no equity existed in the property above the claim of Bank of America, with respect to the first deed of trust.
6. Wells Fargo Bank holds a second deed of trust securing a note with principal balances of approximately $57,626.74. Said deed of trust is wholly unsecured on the petition date and if the property were to be sold at auction, said creditors would receive nothing in respect of the second deed of trust.
7. The Debtor therefore takes the position that WellsFargo Bank notes secured by the second Deed of Trust are unsercured and should be reclassified as a general unsecured claim to receive pro rata with other general unsecured creditors through the Debtors Chapter 13 plan.

BOGGESS & HARKER
5550 Painted Mirage Road, Suite #255
Las Vegas, Nevada 89149
(702) 233-5040 - Fax 233-2209

**Legal Argument**

"Stripping off" a lien is a variant of 'Stripping Down' a lien. The distinguishable characteristic is that in a strip off, the entirety of the lien is negated while in a stripp down, the partially secured lien is bifurcated and only the unsecured portion is removed." In re Bennett, 312 B.R.843, 846 (Bankr.W.D.Ky.2004). "While the authority to strip off wholly unsecured second lien holders is undisputed, some questions remain as to methology," Id at 846. There seems to be a

consensus that a advesart is not required. See also In re Sadala, 294 B.R.180-35. In re Nowling, 279 B.R.607, 609-11 (Bankr.S.D. Fla.2002), In re Hoskins, 262 B.R.693, 696-97 (Bankr.E.D. Mich.2001)

Federal Rule of Bankruptcy Procedure 7001(2) equires an adversary "to determine the vadility,priority, or extent of a lien." 'Validity' means the existence of the ien itself. 'Priority' means the liens relationship to other claims or interest in the collateral. 'Extent' means the scope of the property encompassed by or subject to the lien. In re Millspaugh, 302 B.R.90 (Bank.D. Id.2003) citing In re King, 290.B.R. 641,648 (Bank C.D. III.2003).

Lien stripping requires a valuation to determination of the subject property. Such matters are designed to be dealt with under Rule 3012 Motion. The thirs circuit case of Mansaray-Ruffin 530 F.3d 23, 241-42 (3rd Cir 2004) confirmed that Rule 7001 does not require a debtor to file an adversary complaint where debtor seeks to modify the lien amount based on the value of the collateral. In re Kemp, 391 B.R. 262, 265 (Bankr.D.N.J.2008).

The ninth Circuit has held that a wholly unsecured lien holder's claim can be modified, stripped off and reclassified as a general unsecured claim pursuant to 11 U.S.C. 506(a), despite the anti-modification language in 1322(b) (2). In re Zimmer, 313 F.3d 1220, 1227 (9th Cir.2002)

> "To put it more simply, a claim such as a mortgage is not a 'secured claim' to the extent thaqt it exceded the value of the property secures it. Under the Bankruptcy code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property willbe considered a "secured claim." Here, it is plain that WellsFargo bank claim for the repayment of its loan is an unsecured claim, because deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house"
>
> Zimmer at 1223

"Striping off a lien is simply a result that flows under 506(d) from the valuation of the allegedly unsecured mortgage. Valuation is a contested matter initiated by a motion pursuant to Rule 3012," Millspaugh at 98. If they only issue is whether there is sufficient value in the property to secure that lien and no dispute as to the 'extent' of the lien, there is no need for an adversary proceeding. In re Yekel, 2006 WL 2662849 (Bankr.D.Or.). A debtor is not required to file an

BOGGESS & HARKER
5550 Painted Mirage Road, Suite #255
Las Vegas, Nevada 89149
(702) 233-5040 - Fax 233-2209

adversary proceeding to stripp off her second mortgage. Thus, debtor is bringing a motion to "strip off" Chase's Consensual lien. See also In re Fuller, 255 B.R. 300 (Bankr.S.D.ohio 2003), In re Robert, 313 B.R. 545(Bankr.N.D.N.Y.2004).

WHEREFORE, debtors pray that this Court;

1. Find that Wellfargo Bank is not holders of a lien on the property with respect to the second deed of trust.

2. Immediately avoid, "strip Off", extinguish and expunge from the County Recorder Wellsfargo Bank is wholly unsecured second Deed of Trust from the property pursuant to 11 U.S.C. section 506(a).

3. Reclassify said claims to unsecured claims to be paid Pro Rata with other general unsecured creditors through the debtors Chapter 13 Plan.

4. For such other relief as the court Deems appropriate.

DATED this 27th of December, 2012.

Michae J Harker Esq.

BY:/S/ Michael J Harker

Nevada State Bar #5353
5040 Edna Ave
Las Vegas, NV 89146
Attorney for Debtor

BOGGESS & HARKER
5550 Painted Mirage Road, Suite #255
Las Vegas, Nevada 89149
(702) 233-5040 - Fax 233-2209

EXHIBIT "1"

Complete Summary Report

File No.
Case No. 6037gum

# Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

Property Address 6037 Gum Springs St City North Las Vegas State NV Zip Code 89081
Owner SANCHEZ SANDRA LUZ Intended User SANCHEZ SANDRA County Clark
Legal Description FIFTH & FARM UNIT 1C PLAT BOOK 114 PAGE 39 LOT 96 BLOCK 6 SEC 26 TWP 19 RNG 61
Assessor's Parcel # 124-26-214-040 Tax Year 2010 R.E. Taxes $ 1,312.00
Neighborhood Name FIFTH & FARM UNIT Map Reference MM Census Tract 36.24
Occupant [ ] Owner [X] Tenant [ ] Vacant Special Assessments $ 0 [X] PUD HOA $ 75 [ ] per year [X] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Intended Use Market Value
Client SEE COMMENT ADDENDUM Address On File
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offerings price(s), and date(s). GLVAR/ASSESSOR

## CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ Date of Contract Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | | | | One-Unit Housing Trends | | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [X] Suburban | [ ] Rural | Property Values | [ ] Increasing | [ ] Stable | [X] Declining | PRICE | | AGE | One-Unit | 87 % |
| Built-Up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply | $ (000) | | (yrs) | 2-4 Unit | % |
| Growth | [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time | [X] Under 3 mths | [ ] 3-6 mths | [ ] Over 6 mths | 64 | Low | 3 | Multi-Family | % |
| | | | | | | | | 214 | High | 8 | Commercial | % |
| | | | | | | | | 114 | Pred. | 6 | Other Vacant | 13 % |

Neighborhood Boundaries Neighborhood boundaries can generally be described as: Centennial Pkwy North, 5th St West, Lossee Rd East, Ann Rd South.
Neighborhood Description Subj is located in the incorporated City of North Las Vegas. Major amenities such as employment centers/schools/parks/public services, are conveniently located nearby. Avg markt appeal. Employmnt is stable.
Market Conditions (including support for the above conclusions) SEE COMMENT ADDENDUM

## SITE

Dimensions See Attached Assessor's Parcel Map Area .12 Acres Shape Rectangular View Residential
Specific Zoning Classification R1 Zoning Description Single Family Residence
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | [ ] | Water | [X] | [ ] | Street Asphalt/Typical | [X] | [ ] |
| Gas | [X] | [ ] | Sanitary Sewer | [X] | [ ] | Alley None/Typical | [ ] | [ ] |

FEMA Special Flood Hazard Area [ ] Yes [X] No FEMA Flood Zone X FEMA Map # 32003C1769F FEMA Map Date 11/16/2011
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
No apparent adverse easements, encroachments, special assessments, illegal or legal non-conforming uses noted. Similar to other nearby lots in terms of size/shape/terrain/zoning.

## IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls Concrete/Avg | Floors Tile/Crpt/Avg |
| # of Stories 2 | [ ] Full Basement [ ] Partial Basement | Exterior Walls WdFrmeStuc/Avg | Walls Drywall/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area None sq. ft. | Roof Surface Conc Tile/Avg | Trim/Finish Wood/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish None % | Gutters & Downspouts None | Bath Floor Tile/Avg |
| Design (Style) Contemporary | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type Vinyl Slide/Avg | Bath Wainscot FBGL/Avg |
| Year Built 2005 | Evidence of [ ] Infestation None Noted | Storm Sash/Insulated No/Yes/Avg | Car Storage [ ] None |
| Effective Age (Yrs) 3 | [ ] Dampness [ ] Settlement | Screens Yes/Avg | [X] Driveway # of Cars 2 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] Woodstove(s) # | Driveway Surface Concrete |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel NatGas | [ ] Fireplace(s) # [X] Fence Block | [X] Garage # of Cars 2 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck [ ] Porch Cov | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [ ] Att. [ ] Det. [X] Built-in |

Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe)
Finished area above grade contains: 7 Rooms 4 Bedrooms 2.50 Bath(s) 2,349 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) Tile Floors, Blinds, Granite Ctrs

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). Subject was a tract home of Avg quality construction In Avg Condition. No major physical/functional/external inadequacies noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe
No apparent physical deficiencies or adverse conditions that affect the livability or structural intergrity of the property were noted.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe


This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727

AC Appraisal

File No.
Case No. 6037gum

# Residential Appraisal Report

There are 8 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 95,000 to $ 150,000
There are 30 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 87,000 to $ 167,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 6037 Gum Springs St North Las Vegas, NV 89081 | 5913 Horsehair Blanket Dr North Las Vegas, NV 89081 | | 6025 Leaping Foal St North Las Vegas, NV 89081 | | 1216 Cindy Love Ave North Las Vegas, NV 89081 | |
| Proximity to Subject | | 0.24 miles S | | 0.05 miles SW | | 0.47 miles SE | |
| Sale Price | $ | | $ 98,000 | | $ 106,000 | | $ 95,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 39.42 sq. ft. | | $ 45.22 sq. ft. | | $ 45.22 sq. ft. | |
| Data Source(s) | Inspection | Ext Inspec/Mls | | Ext Inspec/Mls | | Ext Inspec/Mls | |
| Verification Source(s) | GLVAR/ASSESOR | GLVAR/ASSESOR | | GLVAR/ASSESOR | | GLVAR/ASSESOR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | CASH | | FHA/FIX | | CASH | |
| Concessions | | 0/DOM 29 | | 2751/DOM 58 | -2,751 | DOM 108 | |
| Date of Sale/Time | | COE 02/10/2012 | | COE 01/31/2012 | | COE 12/19/2011 | |
| Location | Average | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | .12 Acres | .10 Acres | 0 | .13 Acres | 0 | .14 Acres | 0 |
| View | Residential | Similar | | Similar | | Similar | |
| Design (Style) | Contemporary | Similar | | Similar | | Similar | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Actual Age | 7 yrs | 8 Yrs | | 7 Yrs | | 7 Yrs | |
| Condition | Average | Good | -5,000 | Good | -5,000 | Fair | +5,000 |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | +2,000 | Total / Bdrms / Baths | +2,000 | Total / Bdrms / Baths | 0 |
| Room Count | 7 / 4 / 2.50 | 7 / 3 / 3.00 | -1,000 | 7 / 3 / 2.50 | 0 | 7 / 4 / 3.00 | -1,000 |
| Gross Living Area | 2,349 sq. ft. | 2,486 sq. ft. | -4,110 | 2,344 sq. ft. | 0 | 2,101 sq. ft. | +7,440 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Similar | | Similar | | Similar | |
| Heating/Cooling | FWA/Central | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2 Car Gar. Blt-In | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Cov Patio | Patio | +500 | Patio | +500 | Patio | +500 |
| Fireplace | None | None | | None | | None | |
| Landscaping | Typical for Area | Similar | | Similar | | Similar | |
| Contract Date | | | | | | | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -7,610 | [ ] + [X] - | $ -5,251 | [X] + [ ] - | $ 11,940 |
| Adjusted Sale Price of Comparables | | Net Adj: -8% Gross Adj: 13% | $ 90,390 | Net Adj: -5% Gross Adj: 10% | $ 100,749 | Net Adj: 13% Gross Adj: 15% | $ 106,940 |

SALES COMPARISON ANALYSIS

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) NDC Data, MLS, Realist.com
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) NDC Data, MLS, Realist.com
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None Noted | 11/14/2011 | None Noted | None Noted |
| Price of Prior Sale/Transfer | Past 3 Years | 262,043 | Past 12 Months | Past 12 Months |
| Data Source(s) | GLVAR/ASSESSOR | GLVAR/ASSESSOR | GLVAR/ASSESSOR | GLVAR/ASSESSOR |
| Effective Date of Data Source(s) | 02/15/2012 | 02/15/2012 | 02/15/2012 | 02/15/2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales No current agreement of sale, option, or listing in the MLS was noted for the subject property. MLS/NDC Data reports no previous MLS listing or sale of the subject in prior 36 mos. Comp 1 is a bank transfer and not a market sale.

Summary of Sales Comparison Approach Comps were all from the subject's immediate neighborhood, were the best sales available, and reasonable indicators of value for the subject. All comparables are reasonably similar to the subject as to overall appeal, size, room count, and especially as to date of sale within 3 months and location. As a result few adjustments are required. TIME ADJUSTMENTS: Time adjustments are not given due to sales within 3 month time period. In the final analysis near equal weight and reliance is given to all adjusted indicators.

Indicated Value by Sales Comparison Approach $ 100,000

RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 100,000 Cost Approach (if developed) $ 103,331 Income Approach (if developed) $
The greatest weight was given to the Direct Sales Comparison Approach which best reflects current buyer/seller attitudes and current market conditions. The Cost Approach, although given less weight due to the difficulty of estimating depreciation, provided good support. The Income Approach was not utilized due to insufficient investor sales data.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No conditions other than those in the attached Limiting Conditions. This appraisal report meets the criteria of a complete summary report per USPAP Standards. A Title Policy was
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 100,000 , as of 02/09/2012


This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727

File No.
Case No. 6037gum

# Residential Appraisal Report

**ADDITIONAL COMMENTS**

Note: This report utilizes an electronic signature that meets the criteria of and is approved for use by USAP, FHA/VA, Fannie Mae and Freddie Mac with the same rights and responsibilities of an original signature.

Client: Owner

Intended use is for market valuation purposes only.

Market conditions for the subject's neighborhood appear to be still declining currently over last 6 months after a 3 year steady decline, and similar homes are still selling with an estimated exposure time of 64 days per mls data. There has been a 13-43% decline in home prices from 2007-2011 in the city of North Las Vegas within the west area, but a variety of financing types is still readily available. There were 8 similar sales over past 3 months. There were 12 contingent and pending sale. Currently SP/LP ratio is 97% of similar homes, and indicting signs of subject market continuing to stabilize before end of year.

The most likely buyer-type for the subject property, would be investor or speculator at this time due to current rent levels and house pricing being well below construction cost.

Condition is always suspect with comparable sales, which is relied on per MLS.

*****RANGE OF VALUES: Range of indicators are wider than normal within this community, due to the recent activity with REO sales and secondary market sales, and condition of properties is always suspect and can account for a wider range without interior inspection of comparables. This is not uncommon and does not diminish the reliability of the analyses.

SUBJECT SF: Subject does differ from Assessor SF, but this is not uncommon, generally builders SF submitted are slightly higher or lower due to measurement always rounded, or additions can be present without permits.

CONDITION / AGE / QUALITY: these adjustments are sometimes combined, because it is highly difficult to separate or differentiate between the these items. Adjustments are made for differences based on an approximate depreciated unit-in-place costs, and reflect the most probable market reaction per various market surveys for the amenity-upgrades as to 'quality;" And for refurbishing/updating relative to Condition and Age.

## COST APPROACH TO VALUE (if applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) Land to value ratio is typical & conforming to the neighborhood. Land sales in the area are larger parcels or tract developments. No applicable lot sales were noted in the area. Land value was derived through extraction.

ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW

Source of cost data Building-Cost.Net

Quality rating from cost service Good Effective date of cost data 10/10

Comments on Cost Approach (gross living area calculations, depreciation, etc.)

See attached sketch. Cost Estimates sourced from Building-Cost.net which derives costs from the National Building Cost Manual. Est cost of Gov't development fees & utility hookup at 15% of building costs and entrepreneurial profit of 25% of building costs have beed added to the psf cost estimate. Depreciation calculated on Marshall & Swift tables based on an estimated effective age of 3 years and a remaining economic life of 66 yrs.

Estimated Remaining Economic Life (HUD and VA only) 66 Years

| | | | | |
|---|---|---|---|---|
| OPINION OF SITE VALUE | | | =$ | 2,000 |
| Dwelling | 2,349 | Sq. Ft. @ $ 68.00 | =$ | 159,732 |
| Bsmt | | Sq. Ft. @ $ | =$ | 0 |
| Garage/Carport | 441 | Sq. Ft. @ $ 15.00 | =$ | 6,615 |
| Total Estimate of Cost-new | | | =$ | 166,347 |
| Less | Physical 4 | Functional 0 | External 45 | |
| Depreciation | 6,654 | 0 | 71,862 | =$ ( 78,516 ) |
| Depreciated Cost of Improvements | | | =$ | 87,831 |
| "As-is" Value of Site Improvements | | | =$ | 13,500 |
| Indicated Value By Cost Approach | | | =$ | 103,331 |

## INCOME APPROACH TO VALUE (if applicable)

Estimated Monthly Market Rent $ X Gross Multiplier =$ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowner's Association (HOA)? [ ] Yes [X] No Unit type(s) [X] Detached [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases Total number of units Total number of units sold

Total number of units rented Total number of units for sale Data source(s)

Was the project created by the conversion of existing building(s) into a PUD? [ ] Yes [ ] No If Yes, date of conversion.

Does the project contain any multi-dwelling units? [ ] Yes [ ] No Data source.

Are the units, common elements, and recreation facilities complete? [ ] Yes [ ] No If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association? [ ] Yes [ ] No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**DEFINITION OF MARKET VALUE:** As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.


This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.


This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

APPRAISER

Signature ____
Name Aaron Cunningham
Company Name AC Appraisal
Company Address 2868 Tioga Way
Las Vegas NV 89117
Telephone Number 702-541-8193
Email Address ACAPPRAISAL@COX.NET
Date of Signature and Report 02/17/2012
Effective Date of Appraisal 02/09/2012
State Certification # ____
or State License # A.0007328
or Other (describe) ____ State # ____
State NV
Expiration Date of Certification or License 05/31/2013

ADDRESS OF PROPERTY APPRAISED
6037 Gum Springs St
North Las Vegas, NV 89081

APPRAISED VALUE OF SUBJECT PROPERTY $ 100,000

CLIENT
Name ____
Company Name SEE COMMENT ADDENDUM
Company Address On File
Email Address N/A

SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature ____
Name ____
Company Name ____
Company Address ____
Telephone Number ____
Email Address ____
Date of Signature ____
State Certification # ____
or State License # ____
State ____
Expiration Date of Certification or License ____

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection ____
☐ Did inspect interior and exterior of subject property
Date of Inspection ____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection ____


This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

AC Appraisal

## SUBJECT PHOTO ADDENDUM

File No.
Case No. 6037gum

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 6037 Gum Springs St | | | | | | |
| City | North Las Vegas | County | Clark | State | NV | Zip Code | 89081 |
| Lender/Client | SEE COMMENT ADDENDUM | Address | On File | | | | |



**FRONT OF SUBJECT PROPERTY**
6037 Gum Springs St
North Las Vegas, NV 89081



**REAR OF SUBJECT PROPERTY**



**STREET SCENE**

AC Appraisal

## SUBJECT PHOTO ADDENDUM

File No.
Case No. 6037gum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6037 Gum Springs St | | | | | | |
| City | North Las Vegas | County | Clark | State | NV | Zip Code | 89081 |
| Lender/Client | SEE COMMENT ADDENDUM | Address | On File | | | | |



Family



Kitchen



Living

AC Appraisal

## SUBJECT PHOTO ADDENDUM

File No.
Case No. 6037gum

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 6037 Gum Springs St | | | | | | |
| City | North Las Vegas | County | Clark | State | NV | Zip Code | 89081 |
| Lender/Client | SEE COMMENT ADDENDUM | Address | On File | | | | |



Bathroom



Bedroom



AC Appraisal

COMPARABLES 1-2-3

File No.
Case No. 6037gum

| Borrower | N/A | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Property Address | 6037 Gum Springs St | | | | | | | | |
| City | North Las Vegas | County | Clark | State | NV | Zip Code | 89081 | | |
| Lender/Client | SEE COMMENT ADDENDUM | | | Address | On File | | | | |



**COMPARABLE SALE #** 1
5913 Horsehair Blanket Dr
North Las Vegas, NV 89081



**COMPARABLE SALE #** 2
6025 Leaping Foal St
North Las Vegas, NV 89081



**COMPARABLE SALE #** 3
1216 Cindy Love Ave
North Las Vegas, NV 89081

AC Appraisal

# LOCATION MAP ADDENDUM

File No. Case No. 6037gum

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 6037 Gum Springs St | | | | | | |
| City | North Las Vegas | County | Clark | State | NV | Zip Code | 89081 |
| Lender/Client | SEE COMMENT ADDENDUM | Address | On File | | | | |



AC Appraisal

# SKETCH ADDENDUM

File No.
Case No. 6037gum

Borrower N/A
Property Address 6037 Gum Springs St
City North Las Vegas County Clark State NV Zip Code 89081
Lender/Client SEE COMMENT ADDENDUM Address On File




| SKETCH CALCULATIONS | | Perimeter | Area |
|---|---|---|---|
| A1 / A2 | A1 : 35.0 x 40.0 = | | 1400.0 |
| | A2 : 10.0 x 3.0 = | | 30.0 |
| | Attached Garage | | -441.0 |
| | First Floor | | 989.0 |
| A4 / A5 / A6 | A4 : 35.0 x 20.0 = | | 700.0 |
| | A5 : 25.0 x 4.0 = | | 100.0 |
| | A6 : 35.0 x 16.0 = | | 560.0 |
| | Second Floor | | 1360.0 |
| | **Total Living Area** | | **2349.0** |
| A7 | A7 : 21.0 x 21.0 = | | 441.0 |
| | Attached Garage | | 441.0 |
| | **Total Garage Area** | | **441.0** |

ACI Appraisal

# PLAT MAP

File No.
Case No. 6037gum

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |
| Property Address | 6037 Gum Springs St | | | | | | |
| City | North Las Vegas | County | Clark | State | NV | Zip Code | 89081 |
| Lender/Client | SEE COMMENT ADDENDUM | Address | On File | | | | |



Borrower N/A
Property Address 6037 Gum Springs St
City North Las Vegas County Clark State NV Zip Code 89081
Lender/Client SEE COMMENT ADDENDUM Address On File

# NAVIGATORS INSURANCE COMPANY

**THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.**

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

**PLEASE READ THIS POLICY CAREFULLY.**

## REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY DECLARATIONS

**POLICY NUMBER:** PH11RAL119346IV **RENEWAL OF:** ____________

1. **NAMED INSURED:** Aaron M. Cunningham

2. **ADDRESS:** 7829 Base Camp AVE
LAS VEGAS, NV 89178

3. **POLICY PERIOD: FROM:** 11/19/2011 **TO:** 11/19/2012
12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4. **LIMITS OF LIABILITY:**
A. $ 500,000 *Damages Limit of Liability – Each Claim*
B. $ 500,000 **Claim Expenses** Limit of Liability – **Each Claim**
C. $ 1,000,000 **Damages** Limit of Liability – Policy Aggregate
D. $ 1,000,000 **Claim Expenses** Limit of Liability – Policy Aggregate

5. **DEDUCTIBLE** (Inclusive of **claim expenses**): **A.** $ 500 - Each Claim
**B.** $ 1,000 - Aggregate

6. **PREMIUM:** $ 746.00

7. **RETROACTIVE DATE:** 11/19/2005

8. **FORMS ATTACHED:** NAV RAL NIC PF (02/11) NAV RAL 300 NV (02 11)
NAV RAL 002 (02 11) NAV RAL 008 (02 11) NAV RAL 003 (02 11)

**PROGRAM ADMINISTRATOR:** Herbert H. Landy Insurance Agency Inc.
75 Second Ave Suite 410 Needham, MA 02494-2876

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

---

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.**

*[signature]* *[signature]*

*(Emily Miner)* *(Stanley A. Galanski)*
*Secretary* *President*

Navigators
*Navigating A World in Motion*

NAV RAL DEC (02 11) Page 1 of 1

# APPRAISER LICENSE

STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

[illegible] REAL ESTATE DIVISION [illegible]

This is to Certify That: [illegible] License Number: [illegible]

[illegible]

Issue Date: May 15, [illegible] Expire Date: May 31, [illegible]

[illegible]

[illegible]

REAL ESTATE DIVISION

[illegible]